**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No. 07-CR-0075-CVE** |
| ) | |
| **BRYAN ROBERT RAY and** ) | |
| **HERMAN LEROY FRISTOE,** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |

**OPINION AND ORDER**

Now before the Court are the following motions: Defendant Ray's Motion for Relief from Prejudicial Joinder and Brief in Support (Dkt. # 28), Defendant's [Ray's] Motion to Suppress and Brief in Support (Dkt. # 30), and Defendant Fristoe's Motion to Suppress (Dkt. # 26). Both defendants, Bryan Robert Ray ("Ray) and Herman Leroy Fristoe ("Fristoe"), are charged with one count of possession of 500 grams or more of cocaine with intent to distribute under 21 U.S.C. §§ 841 (a) and (b)(1)(B)(ii).

**I.**

On April 15, 2007, Fristoe and Ray were driving a rental vehicle, a white sports utility vehicle, from Dallas, Texas to Kansas City, Missouri. At approximately 7:59 p.m.,[1] Ray was driving

---

[1] There is some dispute about the exact time of the traffic stop. The video camera in the trooper's vehicle shows that the traffic stop was initiated at 7:59 p.m., while the trooper's report states that traffic stop began at 6:55 p.m. At the hearing, the trooper testified that the video camera clock was not calibrated and the stop occurred at 6:55 p.m. In Fristoe's motion to suppress, he states that the alleged traffic violation occurred around 7:30 p.m. As this is not a critical issue for resolution of the issues raised in defendants' motions, the Court will refer to the time as shown by the video camera clock and the transcript made from that video recording to maintain an accurate time line of events.

east on Interstate 44 ("I-44") near Vinita, Oklahoma when he exited the highway to enter the toll booth. Oklahoma Highway Patrol Trooper Ty Owen ("Owen") was stationed on the east side of the highway and his patrol car was facing oncoming eastbound traffic. He testified that Ray exited the highway without signaling a lane change, and this was unsafe lane change under Oklahoma law. After Ray paid his toll and went through the toll booth, Owen pulled Ray over for failing to signal a lane change before pulling into the toll booth lanes.[2] Owen stepped out of his patrol car and walked towards Ray's vehicle. Owen motioned for Ray to get out of his car and meet Owen at the rear of the vehicle. Fristoe remained in the rental vehicle. Owen explained that Ray did not use a turn signal before entering the toll booth lane. Ray claimed that he did signal before pulling into the toll booth lanes, but Owen believed a traffic violation had occurred. Owen informed Ray that he would issue a warning citation for the traffic violation, and he asked Ray to sit in his patrol car while he completed the citation.

Owen began to write the traffic citation, and Owen and Ray conversed while Owen was writing the citation. Owen testified that Ray was extremely nervous and would not make eye contact during the discussion. Owen also noticed that Ray was speaking quickly, and Owen believed that, based on his experience and training, Ray was attempting to control the conversation. According to Owen, this was an indication that Ray was trying to prevent Owen from asking questions and Ray may have felt this would end the encounter sooner. When Owen asked for the vehicle registration, Ray indicated that his wife had rented the vehicle and that she had the rental agreement in Missouri.

---

[2]   In his written motion, Fristoe challenges Owen's assertion that Ray did not use his turn signal before pulling into the toll booth lanes, and he claims there was no reasonable basis for initiating a traffic stop. However, Ray concedes this failure to signal in his motion to suppress. In this Opinion and Order, the Court will make a finding of fact on this issue based on the evidence presented in the written motions and at the suppression hearing.

Owen testified that Ray became agitated when they discussed the rental paperwork, and Ray's level of anxiety seemed to be increasing as the conversation continued. Ray claimed that his wife kept the rental paperwork with other documents related to their dog breeding business "for tax purposes."[3] The government states that "Owen knew from his experience that the rental agreement needed to always stay with the rental vehicle." Dkt. # 31, at 2. Based on these factors, Owen began to suspect that criminal activity was afoot, but he states that he did not have reasonable suspicion or probable cause at that point in the encounter.

As part of any traffic stop, Owen testified that he needed to determine if the driver was authorized to operate the vehicle. Owen exited the patrol car and walked toward the rental vehicle to ask Fristoe to look for the rental agreement.[4] As Owen approached the rental vehicle, Fristoe rolled the window down about three inches to talk to Owen. Based on his training and experience, Owen interpreted this as a signal that Fristoe did not want to talk to Owen. Owen asked Fristoe to roll the window down further, and Fristoe complied. After Fristoe rolled the window down, Owen

---

[3]  Ray claimed that he drove to Dallas to sell a dog and, at the time he was pulled over, he had completed the sale in Dallas and was driving home to Kansas City. Owen testified that he did not see any evidence that the rental vehicle was used to transport a dog, such as a dog crate. After further questioning by Owen, Ray could identify the purchaser only as a "dude," but he did not know the purchaser's name. This suggested to Owen that Ray's story about selling a dog was false.

[4]  Owen testified that he had not completed writing the citation when he approached Fristoe to ask him for the rental agreement. Owen stated that he had filled in driver's name, address, and license number, but Owen claims that he needed evidence of the vehicle's registration, such as the rental agreement, to complete the written citation.

3

asked Fristoe if the rental agreement was in the car.[5] Fristoe opened the glove compartment and began to search for the rental agreement in the zipped owner's manual case. Owen claims that Fristoe appeared nervous and his hands were "shaking uncontrollably" as he looked for the rental agreement. Id. at 2. Owen asked Fristoe to open the center console to look for the rental agreement, and Fristoe complied.

Owen testified that he saw a "large black taped up bundle" in the center console and, based on his training and experience, he immediately believed the bag contained about a kilogram of a controlled substance.[6] Owen asked Fristoe what was in the bundle, and Fristoe responded that the bundle contained a book. According to Owen, he formed an opinion that Fristoe was lying and this heightened his suspicion. At that time, Owen ordered Fristoe to exit the vehicle, and he placed Fristoe and Ray in handcuffs.[7] After securing both men in his patrol car, Owen returned to the rental car and opened the black bundle with a pocket knife.[8] He found approximately one kilogram of

---

[5] Defense counsel repeatedly asked if Owen "ordered" Fristoe to search for the rental agreement, and implied that Owen acted in a threatening manner toward Fristoe. Owen acknowledged that he placed his hand on his gun while he talked to Fristoe. However, the gun remained in the holster during the entire traffic stop. Owen explained that he occasionally placed his hand on the gun for his own safety because Owen had no way of knowing if Fristoe had a weapon in the vehicle. Owen also denied that he ordered Fristoe to search for the rental agreement.

[6] Owen testified that the center console would not close completely due to the size of the bundle. The government has provided the Court with a picture of the bundle placed flat in the center console, and it appears that the size of the bundle prevented the console from closing.

[7] Based on the video recording and the transcript from the traffic stop, approximately seven minutes passed from the time the traffic stop began to the time when Ray and Fristoe were placed in handcuffs.

[8] The government notes that Owen did find the rental agreement in the center console after the search of the vehicle was completed.

4

cocaine. Owen called for backup, and Troopers Darren Koch and Bob Dietrich arrived on the scene. During the "probable cause search" conducted by the three troopers, they discovered more drugs in the vehicle. On the floorboard of the rear passenger side seat of the vehicle, the troopers found a gallon-sized zip lock baggie containing approximately one or two pounds of cocaine.[9] The baggie was hidden under a black jacket, suggesting that the drugs were purposefully hidden from sight. The troopers also found a small baggie of black tar heroin wrapped in clothing in the backseat.

Ray and Fristoe have separately filed motions to suppress evidence seized during the search of the vehicle. Ray challenges the length of the detention and the search of the vehicle. Even if Owen had reasonable suspicion to initiate a traffic stop, Ray claims that Owen lacked a reasonable basis to extend the traffic stop beyond the issuance of a citation. Ray also claims that he did not consent to a search of the vehicle for the rental agreement and, by using Fristoe to search the vehicle for the rental agreement, Owen conducted an illegal search of the vehicle through Fristoe. Fristoe challenges the lawfulness of his detention under the Fourth Amendment.[10] Fristoe claims that Owen "drafted Fristoe into the state's service" by asking him to search the vehicle, and this exceeded the

---

[9] Owen noted that some of the cocaine was in powder form and some of the cocaine was in brick form.

[10] Fristoe initially claimed that he had standing to challenge his detention and the search of the vehicle. The Tenth Circuit has held that "without a possessory or proprietary interest in the vehicle searched, 'passengers lack standing to challenge vehicle searches.'" United States v. DeLuca, 269 F.3d 1128, 1132 (10th Cir. 2001) (quoting United States v. Eylicio-Montoya, 70 F.3d 1158, 1161 (10th Cir. 1995)). However, Fristoe may "contest the lawfulness of his own detention and seek to suppress evidence found in the vehicle as the fruit of the illegal detention." United States v. Nava-Ramirez, 210 F.3d 1128, 1131 (10th Cir. 2000). At the suppression hearing, Fristoe conceded that Tenth Circuit precedent does not grant him standing, as a passenger, to challenge the search of the vehicle, and the Court will limit its review of Fristoe's arguments to the lawfulness of his detention.

5

scope of the initial traffic stop. Dkt. # 27, at 6. In addition, Ray has moved for relief from prejudicial joinder, because he claims that Ray and Fristoe have a mutually antagonistic defense.

## II.

Ray has moved for severance "due to anticipated antagonistic defenses between he [sic] and [Fristoe]." Dkt. # 28, at 1. Ray requests relief from prejudicial joinder under Fed. R. Crim. P. 14(a), which provides:

> (a) Relief. If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Ray asserts that both defendants have stated their intention to disclaim possession of the cocaine found in the vehicle after the traffic stop, and there is a significant risk the jury will impose criminal liability against both defendants, even if the jury can not determine whether Ray or Fristoe possessed the drugs. At the suppression hearing, Ray argued that he intended to use Fed. R. Evid. 404(b) evidence against Fristoe, and he was unsure if he would be permitted to use this evidence in a joint trial. The government responds that there is a preference for joint trials when co-defendants are charged in the same indictment and, even if Ray and Fristoe will offer antagonistic defenses, no prejudice will result to either defendant from a joint trial.

The Supreme Court has explicitly held that "mutually antogonistic defenses are not prejudicial *per se*," and severance is not required unless the defendants will be prejudiced by a joint trial. Zafiro v. United States, 506 U.S. 534, 538 (1993). The Tenth Circuit has articulated a three step inquiry for a district court ruling on a motion to sever:

> First, it must determine whether the defenses presented are "so antagonistic that they are mutually exclusive." Second, because "[m]utually antagonistic defenses are not prejudicial per se," a defendant must further show "a serious risk that a joint trial

6

> would compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence." Third, if the first two factors are met, the trial court exercises its discretion and "weigh[s] the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration."

United States v. Pursley, 474 F.3d 757, 765 (10th Cir. 2007). Under Fed. R. Crim. P. 14, defendants are not entitled to severance as a matter of right, and the trial court has substantial discretion when determining if severance is appropriate. Bailey v. United States, 410 F.2d 1209, 1213 (10th Cir. 1969).

Assuming the first element of Pursley is satisfied and defendants have a mutually antagonistic defense, Ray has not shown that any prejudice will result from a joint trial in this case. Ray cites United States v. Green, 324 F. Supp. 2d 311 (D. Mass. 2004), for the proposition that federal courts can sever a case when two defendants dispute possession of drugs, because the defendants are both relying on an inherently antagonistic defense. However, Green is distinguishable. In Green, five co-defendants were charged with violations of the Racketeer Influenced and Corrupt Organizations Act and, because one of the factual allegations against the defendants included murder, two of the defendants faced the death penalty under federal law. Id. at 314. The court severed the trial of the two defendants facing the death penalty, Darryl Green and Brendan Morris. The government intended to argue that Green and Morris had joint criminal liability for murder, while the defendants intended to show that there was one shooter. Given the serious penalty at issue, the district court elected to sever the trials of Green and Morris, but the court still joined each of the capital defendants with a group of non-capital defendants over the defendants' objection. It is not clear how Green applies to this case, as possession of drugs was not

at issue in Green.  Green does not provide a legal basis for a finding of prejudice in this case under the second element of Pursley.

Ray argues that it is unclear whether he will be able to use Rule 404(b) evidence against his co-defendant in a joint trial.  Fed. R. Evid. 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

The rule does not include any language that would imply a defendant can not use Rule 404(b) evidence against a co-defendant.  However, in practice, Rule 404(b) evidence is ordinarily used by the prosecution against a defendant.  This case presents a somewhat unusual situation, because Rule 404(b) evidence is rarely offered by a defendant in support of his defense and there is little case law discussing a defendant's right to rely on Rule 404(b) evidence against a codefendant at trial.  Based on the few cases the court has found, it appears that a defendant can use Rule 404(b) evidence in support of his own defense.  United States v. Aboumoussallem, 726 F.2d 906, 911 (2d Cir. 1984) (Rule 404(b) evidence is admissible for defensive purposes); United States v. McClure, 546 F.2d 670, 673 (11th Cir. 1977) (reversible error to exclude Rule 404(b) evidence offered by defendant).  Of course, Fristoe and the government have the right to contest the admissibility of the evidence, and the Court must find that evidence satisfies the four part test crafted by the Tenth Circuit for the admissibility of Rule 404(b) evidence.  United States v. Mares, 441 F.3d 1152, 1156 (10th Cir. 2006); United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000).  However, there is certainly

nothing in Rule 404(b) prohibiting a defendant from using evidence of other crimes against a co-defendant, and this is not a source of prejudice necessitating severance under Fed. R. Crim. P. 14(a).

The general rule is that defendants indicted together should be tried together. Zafiro, 506 U.S. at 538; United States v. Green, 115 F.3d 1479, 1487 (10th Cir. 1997); United States v. Martinez, 76 F.3d 1145, 1153 (10th Cir. 1996). In this case, it is not even clear that defendants will raise mutually antagonistic defenses, and Ray simply states that it is a possibility. Ray does not point to any evidence that would be admissible against Fristoe but not admissible in a trial against Ray only. See, e.g., Bruton v. United States, 391 U.S. 123 (1968). In addition, Ray can use Rule 404(b) evidence if he makes a sufficient showing that this evidence is admissible, and he will not be denied the use of any evidence based solely on the fact that Ray and Fristoe will be tried together. Based on the arguments presented in Ray's motion and at the suppression hearing, he has not established that any prejudice will result from a joint trial, or that he will deprived of a specific trial right if defendants are tried together. Martinez, 76 F.3d at 1152. Although Ray apparently believes he will have a better chance of acquittal if defendants are tried separately, this is not a legitimate basis to grant a motion to sever. United States v. Cardell, 885 F.2d 656, 668 (10th Cir. 1989). Therefore, his motion to sever is denied.

### III.

Fristoe and Ray challenge the lawfulness of their detention and Ray contests the search of the vehicle under the Fourth Amendment. They assert that Owen "draft[ed] Fristoe into the state's service and utiliz[ed] him" to conduct a search which would otherwise have been illegal under the Fourth Amendment. Dkt. # 27, at 6.

The Initial Stop

A traffic stop is treated as an investigative detention, and such a stop is governed by the standards set forth in Terry v. Ohio, 392 U.S. 1 (1968). United States v. Bradford, 423 F.3d 1149, 1156 (10th Cir. 2005). When determining the reasonableness of a traffic stop, the Court must make two separate inquiries. First, did the police officer have a valid reason for initiating the traffic stop. United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995). "[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has a reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." Id. Second, a traffic stop must not become an unnecessarily lengthy detention, but must be limited in scope to the purpose of the initial traffic stop. United States v. Rice, 483 F.3d 1079, 1083 (10th Cir. 2007). A police officer may extend the length of the traffic stop for questioning beyond the initial purpose of the traffic stop only if the officer has "an objectively reasonable and articulable suspicion that illegal activity has occurred, or the driver voluntarily consents to further questioning." United States v. Ramirez, 479 F.3d 1229, 1243 (10th Cir. 2007).

Fristoe claims that Owen lacked reasonable suspicion to initiate a traffic stop and that the length of the detention was unreasonable. In Fristoe's motion to suppress, he claims that Ray did use his turn signal before entering the toll booth lanes, and the traffic stop was invalid. At the suppression hearing, Owen testified that Ray failed to signal, and Ray does not contest this fact in his motion to suppress. The Court finds that Owen had reasonable suspicion that a traffic violation occurred, specifically that Ray failed to signal a lane change before entering the toll booth lanes. In United States v. Manjarrez, 348 F.3d 881 (10th Cir. 2003), the Tenth Circuit held that failure to signal a lane change before entering the toll booth lanes constitutes a traffic violation under

10

Oklahoma law. Id. at 885. Owen's testimony that Ray committed a traffic violation was credible, and neither defendant offered any evidence to refute Owen's testimony. Therefore, the Court finds that Owen had reasonable suspicion that a traffic violation occurred and the first prong of Terry is satisfied.

Under the second prong of the Terry analysis, the scope of the detention must not exceed the initial purpose of the traffic stop. A traffic stop can become unlawful if it is prolonged beyond the time needed to complete the purpose of the initial traffic stop. United States v. Patterson, 472 F.3d 767, 776 (10th Cir. 2006). The Tenth Circuit has recently held that the "correct Fourth Amendment inquiry (assuming the detention is legitimate) is whether an officer's traffic stop questions 'extended the time' that a driver was detained, regardless of the questions' content." United States v. Stewart, 473 F.3d 1265, 1269 (10th Cir. 2007). Ray and Fristoe claims that Owen exceeded the permissible scope of a traffic stop by using a passenger to search private areas of the vehicle. However, Owen is permitted to determine as a routine part of a traffic stop whether Ray was authorized to operate the vehicle. United States v. Hunnicut, 135 F.3d 1345, 1349 (10th Cir. 1998); United States v. Soto, 988 F.2d 1548, 1554 (10th Cir. 1993). When police pull over a rental vehicle, the failure to produce the rental agreement during the traffic stop is a legitimate source of police questioning and it can provide a legitimate basis to extend the traffic stop. United States v. Martin, 422 F.3d 597, 602 (7th Cir. 2005); United States v. Obregon, 748 F.2d 1371, 1376 (10th Cir. 1984); United States v. McKinney, 2007 WL 230766, at *2 (S.D. Ga. Jan. 24, 2007). Owen's questions about the rental agreement were within the scope of the original traffic stop, because Owen was authorized to determine as a routine part of a traffic stop whether the driver was authorized to operate the vehicle. United States v. Zubia-Melendez, 263 F.3d 1155, 1161 (10th Cir. 2001).

Neither Ray nor Fristoe has shown that the traffic stop was invalid from its inception or that the length on the detention was unreasonable. In particular, Fristoe's arguments are improperly directed towards the search of the vehicle rather than the length of the detention, and he lacks standing to challenge the automobile search. After reviewing the video footage and transcript of the traffic stop, the Court finds that approximately seven minutes passed from the inception of the traffic stop to the time Owen placed Ray and Fristoe in handcuffs. This is not an unreasonable length of time for a traffic stop. See United States v. Biseno, 2006 WL 12248 (10th Cir. Jan. 18, 2006) (police officers did not impermissibly extend the duration of the traffic stop where the process took no more than 19 minutes); United States v. Garner, 2003 WL 21465499 (10th Cir. June 25, 2003) (15 minute lapse of time from the stop of the vehicle to the time the officer issued a warning citation did not constitute unlawful detention).[11] The Court finds that Owen had reasonable suspicion to initiate a traffic stop and the length of the detention was reasonable. In addition, Owen's questions about the location of the rental agreement were clearly within the scope of the traffic stop, as he was simply attempting to determine if Ray was authorized to drive the vehicle.

Fristoe's "Search" for the Rental Agreement

Ray moves to suppress evidence seized during a search of the automobile on the ground that Owen exceeded the permissible scope of the traffic stop by using Fristoe to search the vehicle for the rental agreement. Ray acknowledges that Owen could ask Ray to produce his driver's license and proof that he was authorized to use the vehicle, but he claims that Owen did not have the

---

[11]  The Court is aware that citation of an unpublished decision is disfavored. 10th Cir. R. 36.3. However, this unpublished decision has persuasive value on a material issue not address in a published opinion and it assists the Court in its disposition of this issue.

authority to search the vehicle for the rental agreement. At approximately 8:03 p.m., or four minutes into the traffic stop, Owen asked Ray where the rental agreement was located. As discussed above, this is not an unreasonable amount of time for a traffic stop and Ray's authority to operate the vehicle was a permissible subject about which to inquire during a traffic stop. However, Ray argues that Owen used Fristoe to effect a separate Fourth Amendment search of the vehicle, and Owen lacked reasonable suspicion to suspect Ray or Fristoe of criminal activity beyond the scope of the initial traffic stop.

The heart of Ray's Fourth Amendment challenge goes to the method used by Owen to determine the presence of the rental agreement in the vehicle. Owen did not seek consent to search the vehicle, nor did Ray voluntarily offer his consent for Owen to search the car for the rental agreement. Ray argues that Owen did not have probable cause to search the vehicle for the rental agreement, and Owen's use of Fristoe to conduct a search that otherwise violated Ray's rights should constitute a violation of the Fourth Amendment. However, Ray fails to establish a necessary predicate for this argument -- that Owen's request to Fristoe to look for the rental agreement was a search under the Fourth Amendment.[12] The underlying presumption of Ray's argument is that Owen conducted a Fourth Amendment search of the vehicle when he asked Fristoe to look in the glove compartment or the center console.

---

[12] Both parties rely on New York v. Class, 475 U.S. 106 (1986), where the Supreme Court held that a police officer did not violate a driver's rights by reaching into a vehicle to clear papers that were obscuring the Vehicle Identification Number ("VIN"). Id. at 108. However, the Tenth Circuit has limited the applicability of Class to verification of the VIN, and it does not apply under the facts of this case. United States v. Chavira, 467 F.3d 1286, 1289 n.1 (10th Cir. 2006); United States v. Caro, 248 F.3d 1240, 1245 (10th Cir. 2001).

The issue is whether Owen could ask Fristoe, a passenger in the vehicle, to look for the rental agreement. Owen could separate the driver and passenger during the traffic stop, and he could separately question Fristoe to verify Ray's responses about the vehicle's ownership or defendants' travel destination. See United States v. Lee, 159 Fed. Appx. 1, 6-7 (10th Cir. Dec. 7, 2005);[13] United States v. Linkous, 285 F.3d 716, 719 (10th Cir. 2002); United States v. $159,880.00 in U.S. Currency, More or Less, 387 F. Supp. 2d 1000, 1018 (S.D. Iowa 2005). Although the specific issue in this case has not clearly been addressed by other courts, existing case law has not treated a police officer's request to a passenger to produce the vehicle's registration as a search under the Fourth Amendment. United States v. Malloy, 217 Fed. Appx. 342 (5th Cir. Feb. 8, 2007) (police separated driver and passenger before requesting registration, and passenger provided police with registration papers); United States v. Henry, 372 F.3d 714, 716 (5th Cir. 2004) (police officer's request to passenger to provide registration not treated as a separate search). Tenth Circuit precedent implies that police may ask the driver and the passenger to produce valid registration and, if neither can produce the registration, this may provide reasonable suspicion to continue a traffic stop. See United States v. de la Fuente-Ramos, 2000 WL 1717186, at *7 (10th Cir. Nov. 16, 2000) ("We have held that an officer making a traffic stop may ask about travel plans and ownership of the vehicle . . . and that, if the driver and the passenger are unable to produce a valid registration, a reasonable suspicion arises that the vehicle may be stolen . . . ."). Owen's request for Fristoe to look for the rental agreement was within the scope of the traffic stop, and the Court has not found precedent

---

[13]   The Court is aware that citation of an unpublished decision is disfavored. 10th Cir. R. 36.3. However, this unpublished decision has persuasive value on a material issue not address in a published opinion and it assists the Court in its disposition of this issue.

suggesting that Owen could not ask Fristoe to produce the rental agreement. Based on existing case law, the Court concludes that Owen did not violate the Fourth Amendment by asking a passenger to produce the rental agreement.

Based on the evidence presented in the suppression hearing, the Court finds that Owen simply asked Fristoe to look for the rental agreement in the glove compartment and the center console, and Fristoe complied without objection. This was a routine part of the traffic stop, not a separate search, and as long as Owen stayed within the scope of the traffic stop, this does not present a problem under the Fourth Amendment. United States v. Olivera-Mendez, 484 F.3d 505, 509 (8th Cir. 2007) ("When there are complications in carrying out the traffic-related purposes of the stop, for example, police may reasonably detain a driver for a longer duration than when a stop is strictly routine."); United States v. Gregoire, 425 F.3d 872, 879 (10th Cir. 2005) ("In a routine traffic stop, a trooper may request a driver's license, vehicle registration and other required papers, run necessary computer checks, and then issue any warning or citation."). The undersigned can not find any case law treating a police officer's request to produce a vehicle's registration or a rental agreement as anything other than a routine part of a traffic stop, and the Court does not find that Owen violated the Fourth Amendment under the facts of this case.

Even if Owen did not violate Ray's Fourth Amendment rights by asking Fristoe to look in the center console for the rental agreement, the government must still show that Owen could lawfully enter the vehicle to seize the drugs, because Owen's removal of the drugs from the vehicle was clearly a seizure under the Fourth Amendment. The government argues that the black bundle containing approximately one kilogram of cocaine was in plain view after Fristoe opened the center

console, and Owen could seize the bundle without a warrant. Under the plain view doctrine, a police officer may seize evidence if:

> (1) the officer was lawfully in a position from which to view the object seized in plain view; (2) the object's incriminating character was immediately apparent-i.e., the officer had probable cause to believe the object was contraband or evidence of a crime; and (3) the officer had a lawful right of access to the object itself.

United States v. Sanchez, 89 F.3d 715, 719 (10th Cir. 1996) (quoting United States v. Soussi, 29 F.3d 565, 570 (10th Cir. 1994)). In this case, Owen was lawfully located in a position outside the vehicle from which to view the bundle. The government claims that Owen recognized the bundle as a kilogram-sized package containing drugs and, based on his experience, the incriminating character of the evidence was immediately apparent. Owen testified that he had seen similar bundles in previous traffic stops, and the incriminating character of the bundle was immediately apparent based on his training and experience. See United States v. Castorena-Jaime, 285 F.3d 916 (10th Cir. 2002) (police officer can show that incriminating nature of object was immediately apparent by establishing a "practical, nontechnical probability that incriminating evidence is involved"). In addition, Fristoe lied about the contents of the bundle and Owen relied on this as a factor to determine that criminal activity was occurring. According to the government, Owen's observation was also sufficient to show that probable cause existed to perform an automobile search, and he had a lawful right of access to the vehicle.

The Court finds that government has established all three elements of the plain view doctrine, and Owen did not violate Ray's Fourth Amendment rights by removing the drugs from the vehicle. Owen's actions toward Fristoe were clearly within the scope of the traffic stop and Owen had probable cause to believe that drugs were in the car before he instituted a search of the vehicle. No

16

Fourth Amendment violation occurred, and the Court denies suppression of the evidence seized during the search of the vehicle.

Reasonable Suspicion for Continued Detention

Given that the Court has found that Owen's request to Fristoe was within the scope of the initial traffic stop, the Court does not need to consider defendants' arguments that Owen lacked reasonable suspicion to continue the traffic stop. See Patterson, 472 F.3d at 778. However, the Court also finds that, even if Owen had detained defendants beyond the time necessary to effectuate the traffic stop, Owen had reasonable suspicion to prolong the stop.

It is well established that a detention that extends beyond the scope of the traffic stop is reasonable if prolongation of the stop was supported by reasonable suspicion.[14] See United States v. Wallace, 429 F.3d 969, 974 (10th Cir. 2005). Reasonable suspicion is a "particularized and objective basis for suspecting the person stopped of criminal activity." Ornelas v. United States, 517 U.S. 690, 696 (1996) (internal quotation marks omitted). An "inchoate and unparticularized suspicion or 'hunch' is insufficient" to support reasonable suspicion. United States v. Hall, 978 F.2d 616, 620 (10th Cir. 1992) (internal quotations and citations omitted). Reasonable suspicion "represents a minimum level of objective justification which is considerably less than proof of wrongdoing by a preponderance of the evidence." United States v. Alcaraz-Arellano, 441 F.3d 1252, 1260 (10th Cir. 2006) (quoting United States v. Mendez, 118 F.3d 1426, 1431 (10th Cir. 1997)). In determining whether an officer had reasonable suspicion of criminal activity, the Court

---

[14] Prolongation of the stop is also justified if the encounter is consensual. See United States v. Elliott, 107 F.3d 810, 814 (10th Cir. 1997). Consent is not an issue in this case.

does not evaluate the facts in isolation but instead construes them together based on the totality of the circumstances. United States v. Arivizu, 534 U.S. 266, 274 (2002).

In the government's response, it cites a list of factors apparent to Owen at the time of the traffic stop showing that he had reasonable suspicion that criminal activity was afoot:

- a. Extreme nervousness of the driver;
- b. the driver wrenching his hands;
- c. the driver sweating abnormally;
- d. the driver not making eye contact;
- e. driver trying to control conversation;
- f. nervousness after being told only a warning was to be issued;
- g. rental vehicle, allegedly without documentation;
- h. driver who did not rent vehicle;
- i. rented vehicle in third party name;
- j. confusing travel explanation;
- k. nervous conversation without questions prompting answers;
- l. passenger only rolling window down a few inches;
- m. passenger extremely nervous;
- n. passenger shaking hands and fumbling for paperwork;
- o. passenger looking for rental agreement in zippered owner manual case;
- p. car traveling from source city;
- q. lack of dog equipment in vehicle (crate, etc.); and
- r. purported lack of rental agreement.

Dkt. # 31, at 12. The Court recognizes that each of these factors, in isolation, does not support reasonable suspicion and that some of the factors are only minimally relevant in the reasonable suspicion analysis. See, e.g., United States v. Santos, 403 F.3d 1120, 1227 (10th Cir. 2005) ("nervousness is a sufficiently common – indeed natural – reaction to confrontation with the police" and is of "limited significance" in a reasonable suspicion analysis, but "extraordinary and prolonged nervousness can weigh significantly in the assessment of reasonable suspicion"); id. at 1132 (courts should not place too much emphasis on travel to common destinations because "[o]ur holding that s*uspicious* travel plans can form an element of reasonable suspicion should not be taken as an

18

invitation to find travel suspicious per se") (emphasis in original). However, as noted above, the Court views these factors in totality. The Tenth Circuit recently explained,

> Factors, which when taken separately may be perfectly innocent behavior, can support a finding of reasonable suspicion when taken together. Conversely, although the nature of the totality of the circumstances makes it possible for individually innocuous factors to add up to reasonable suspicion, it is impossible for a combination of wholly innocent factors to combine into a suspicious conglomeration unless there are concrete reasons for such an interpretation. In analyzing the factors that may amount to reasonable suspicion, we must be careful to judge the officer's conduct in light of common sense and ordinary human experience but also to grant deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances.

Ramirez, 479 F.3d at 1244.

In this case, there was sufficient objective evidence available to Owen at the time of the traffic stop to support a finding of reasonable suspicion. Ray seemed unusually nervous for a passenger who was aware he was receiving a warning citation only. Ray's story about selling a dog was suspicious, because there was no evidence of dog equipment in his car and Ray could not identify the purchaser. There is evidence that Ray was trying to control the conversation, because his lengthy statements were not in response to any questions from Owen. Ray's statement that the rental agreement was not in the vehicle was also a cause for suspicion, because proof of authorization to drive a rental vehicle should be kept in the car. Fristoe's conduct, such as initially failing to roll the window down more than three inches and his shaking hands while looking for the rental agreement, could have legitimately aroused Owen's suspicion of criminal activity. Owen had sufficiently concrete reasons for suspecting criminal activity and, even if the detention was extended beyond the initial purpose of the traffic stop, Owen's actions were not unreasonable under the Fourth Amendment.

**IT IS THEREFORE ORDERED** that Defendant Ray's Motion for Relief from Prejudicial Joinder and Brief in Support (Dkt. # 28), Defendant's [Ray's] Motion to Suppress and Brief in Support (Dkt. # 30), and Defendant Fristoe's Motion to Suppress (Dkt. # 26) are **denied**.

**DATED** this 5th day of July, 2007.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT